# In the United States Court of Federal Claims

No. 16-1691C

(Filed: January 3, 2019)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * *  | | |
| CITY OF WILMINGTON, DELAWARE, | * * * | Motion to Compel; Attorney-Client Privilege; Waiver; Clean Water Act; 33 U.S.C. § 1323; Reasonable Service Charges. |
| Plaintiff, | * * | |
| v. | * * | |
| THE UNITED STATES, | * * | |
| Defendant. | * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Christopher D. Pomeroy and Paul T. Nyffeler, Aqualaw PLC, 6 S. 5th Street, Richmond, VA 23219, and Luke W. Mette and Rosamaria Tassone, City of Wilmington Law Department, 800 N. French Street, 9th Floor, Wilmington, DE 19801, Of Counsel, for Plaintiff.

Chad A. Readler, Robert E. Kirchman, Jr., Deborah A. Bynum, Franklin E. White, Jr., and Douglas T. Hoffman, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

---

**WILLIAMS**, Senior Judge.

The City of Wilmington, a municipal corporation of the State of Delaware ("Wilmington"), brought the instant action to recover "reasonable service charges" under Section 1323 of the Clean Water Act for control and abatement of stormwater pollution. Plaintiff assessed service charges on five properties owned and operated by the Army Corps of Engineers within the Wilmington city limits from January 4, 2011, through December 19, 2016. Defendant does not dispute that it failed to pay those service charges, but contends that these assessments do not constitute "reasonable service charges" under the Clean Water Act.

This matter comes before the Court on Plaintiff's motion to compel Defendant to respond to three discovery requests - - Interrogatory No. 10, which asked Defendant to describe the United States' process for determining whether or not a stormwater charge is a reasonable service charge, and Requests for Production of Documents Nos. 5 and 6, which sought an April 11, 2011 memorandum from the Department of Defense Deputy General Counsel entitled "Stormwater Charges and the Waiver of Sovereign Immunity Under the Clean Water Act." Defendant objected

that this April 11 memorandum is protected by the attorney-client privilege. For the reasons stated below, Plaintiff's motion to compel is granted.

**The April 11, 2011 Memorandum Is Not Subject to the Attorney-Client Privilege**

The Court reviewed the April 11, 2011 memorandum in camera and concluded that the memorandum was not privileged. Order on In Camera Review 3 (Sept. 18, 2018).

The April 11, 2011 memorandum is a response from the Department of Defense's Deputy General Counsel (Environment and Installations) to the Under Secretary of Defense's request for analysis of a February 25, 2011 Office of Legal Counsel opinion entitled "Reimbursement or Payment Obligation of the Federal Government Under Section 313(C)(2)(B) of the Clean Water Act."

The memorandum summarizes a publicly available Office of Legal Counsel opinion and lists seven criteria for DoD components to consider when determining whether a specific stormwater charge is reasonable and payable under the Clean Water Act. As recounted in the memorandum, to be deemed "reasonable" the service charge must:

1. relate to the control and abatement of water pollution;
2. be reasonable;
3. be nondiscriminatory;
4. be based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution;
5. be measured in terms of quantities of pollutants, or volume or rate of stormwater discharge or runoff from the property or facility;
6. be used to pay or reimburse the costs associated with any stormwater management program (whether associated with a separate storm sewer system or a sewer system that manages a combination of stormwater and sanitary waste); and
7. may include the full range of programmatic and structural costs attributable to collecting stormwater, reducing pollutants in stormwater, and reducing the volume and rate of stormwater discharge;

Regardless of whether that reasonable fee, charge, or assessment is denominated a tax.

Memorandum for Assistant Deputy Under Secretary of Defense (Installations and Environment), April 11, 2011 at 2.

The April 11 memorandum continues:

It is this office's view that the best way to proceed is as we have in the past. The Department should provide guidance to the DoD Components that they should review, as they would any charge levied against the Department, each stormwater charge to determine if it fits within the criteria of section 313(c)(1). If it fits, they should pay it; if it does not fit, they should refrain from paying it. It is our expectation that virtually all such charges that were payable prior to the amendment of section 313 will continue to be payable. The primary emphasis should be placed on reviewing new stormwater charges.

Id.

The attorney-client privilege protects a client's confidential communications to an attorney necessary to obtain legal advice. Fisher v. United States, 425 U.S. 391, 403 (1976). The attorney-client privilege is properly invoked where:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] . . . (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] . . . (4) the privilege has been (a) claimed and (b) not waived by the client.

Blue Lake Forest Prods., Inc. v. United States, 75 Fed. Cl. 779, 791-92 (2007) (quoting Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-85 (2000) (internal quotation marks omitted)). "Communications between a government agency and government agency counsel . . . are included within the ambit of the attorney-client privilege." Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 495 (2009) (citing Blue Lake, 75 Fed. Cl. at 792).

When determining whether a communication is subject to the privilege, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) (citing Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)). The attorney-client privilege protects an attorney's communication to a client only when it reveals, "directly or indirectly, the substance of a confidential communication by the client" made for the purpose of obtaining legal advice. Am. Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed. Cir. 1987) (citing Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 28 (N.D. Ill. 1980)); Oasis Int'l Waters, Inc. v. United States, 110 Fed. Cl. 87, 97 (2013).

The April 11, 2011 memorandum does not reveal a communication from a client to an attorney for the purpose of obtaining legal advice. The April 11, 2011 memorandum includes no information about the nature or context of the request to which it responds. Rather, the memorandum summarizes a publicly available Office of Legal Counsel opinion and provides general guidance to DOD components for evaluating the reasonableness of service charges. Consequently, the attorney-client privilege does not shield the April 11, 2011 memorandum from discovery.

**Relevance of Plaintiff's Requested Discovery**

Defendant contends that none of the discovery requests at issue seek material relevant to a claim or defense. Defendant argues that the Court need only decide the following issues, which do not implicate the process followed by DOD components in assessing the reasonableness of stormwater fees:

> whether Wilmington's stormwater fees satisfy 33 U.S.C. § 1323 such that they are payable in the quantum Wilmington asserts; (2) if they are not payable at

3

Wilmington's asserted quantum, whether there is any payable quantum under 33 U.S.C. § 1323 (and if so, what that quantum is); and (3) whether interest is payable (and if so, the quantum of such interest).

Def.'s Resp. 5.

Defendant argues that because the Court conducts a de novo inquiry regarding the reasonableness of the stormwater charges, Defendant's process for determining reasonableness, its adherence to that process, and the opinions of Defendant's employees regarding that process are irrelevant. In the context of discovery, where relevance is broadly construed, Defendant's contention fails. See Rule 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); Katz v. Batavia Marine & Sporting Supplies, 984 F.2d 422, 424 (Fed. Cir. 1993). Relevant information includes information "reasonably calculated to lead to the discovery of admissible evidence." Petro-Hunt, L.L.C. v. United States, 114 Fed. Cl. 143, 144-45 (2013) (internal citations and quotation marks omitted).

The City of Wilmington owns and operates a municipal storm sewer system that conveys only stormwater, and a combined sewer system that conveys a combination of stormwater and sanitary waste. Wilmington manages both systems with a goal of reducing stormwater pollutants discharged into rivers, streams, lakes, and other bodies of water. Wilmington assesses fees on property located within its city limits and places such fees in an enterprise fund used exclusively for the provision of stormwater services and facilities. Wilmington City Code § 45-53. Wilmington assesses penalties and interest if property owners do not pay such fees in a timely fashion.

Section 1323(a) of the Clean Water Act provides that the Federal Government is subject to these fees "in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges." 33 U.S.C. § 1323(a) (2012). The United States Government admittedly failed to pay the assessments on five properties it owns or operates in Wilmington's city limits.

Section 1323(c) of the Clean Water Act defines "reasonable service charges" as follows:

(c) Reasonable Service Charges—

(1) In general. For the purposes of this Act, reasonable service charges described in subsection (a) include any reasonable nondiscriminatory fee, charge, or assessment that is—

(A) based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution (in terms of quantities of pollutants, or volume or rate of stormwater discharge or runoff from the property or facility); and

(B) used to pay or reimburse the costs associated with any stormwater management program (whether associated with a separate storm sewer system or a sewer system that manages a combination of stormwater and sanitary waste), including the full range of programmatic and structural

4

    costs attributable to collecting stormwater, reducing pollutants in stormwater, and reducing the volume and rate of stormwater discharge, regardless of whether that reasonable fee, charge, or assessment is denominated a tax.

Id.

  The sole ground Defendant articulated for failing to pay Wilmington's fees was that the assessments were not "reasonable" within the meaning of the Clean Water Act. To date in this litigation, Defendant has failed to say why or how it arrived at this conclusion, or how it interpreted "reasonable." Instead, Defendant has unjustifiably invoked the attorney-client privilege and claimed its rationale for nonpayment is not relevant. In essence, Defendant is contending that in defending its position that the assessments were unreasonable, it need not disclose either its contemporaneous rationale for reaching that conclusion or any iterations of its decisionmaking process along the way.

  The fact that the Court will ultimately resolve these issues de novo without affording Defendant's decisionmaking process deference—as the Court would if it were reviewing Defendant's decision under the arbitrary and capricious standard of review—does not shield Defendant's decisionmaking process from discovery. The process Defendant follows to evaluate the reasonableness of stormwater charges is relevant for discovery purposes. In declining to pay the City of Wilmington's fees, Defendant presumably marshalled facts that led it to determine the charges were unreasonable, and Plaintiff is entitled to discovery of those facts - - just as Defendant is entitled to learn how Plaintiff calculated the charges that were to be "based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution . . . ." 33 U.S.C. § 1323(c)(1)(A). As Plaintiff observes, the requested information may also be used to question Defendant's witnesses and experts, both regarding the nature of the properties at issue and the stormwater evaluation, and any alternative calculation or assessment mechanism Defendant proposes. Defendant initially represented that the issue of reasonable service charges "will almost certainly be the subject of expert testimony." Pl.'s Mot. Ex. C, at 7. As Plaintiff argues, the information it seeks could be used to impeach any expert that Defendant may call to opine on the reasonableness of the stormwater charges. Pl.'s Reply 8 (citing Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000) ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable.") (alteration in original)).

  Plaintiff also correctly points out that technically Defendant has waived its ability to object to the discovery requests on the basis of relevance by failing to lodge such objection to Interrogatory No. 10 in a timely fashion and failing to object to the document requests on relevance grounds. See Rule 33(b)(2). In its original May 4, 2018 response to Plaintiff's document request, Defendant only objected on privilege grounds. In a May 22, 2018 email to Plaintiff's counsel, counsel for Defendant first claimed that the documents are not relevant. Defendant has not articulated "good cause" for failing to raise its objection in its responses to the discovery requests. See Rule 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

  In a strange attempt to turn the tables, Defendant argues that Plaintiff waived its right to argue that the requests are relevant because it failed to address the issue in its motion to compel. Def.'s Resp. 8-9 (citing Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 588 (2014)).

Defendant, not Plaintiff, bears the initial burden of raising an objection, and Plaintiff did not waive its position on relevance by failing to presage its opponent's objection. See Kinetic Concepts, Inc. v. Convatec Inc., 268 F.R.D. 255, 255 n.6 (M.D.N.C. 2010) ("It is the rule in federal court that the burden is on the party resisting discovery on relevancy grounds to support his objection; . . . It is not the party propounding discovery that has the burden, at least in the first instance, to show relevancy.") (internal citation and quotation marks omitted); Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery.").

Additionally, Defendant asserts that the United States is not bound by the agency process or outcome because the conduct of litigation is reserved to the Department of Justice by statute. This circumstance does not make agency conduct nondiscoverable or irrelevant. While the litigation is handled by DOJ, it is the agency's conduct in refusing to pay any charges that is at issue, not DOJ's litigation stance.

Accordingly, Defendant's objection on the basis of relevance is overruled.

**Defendant Waived the Attorney-Client Privilege By Incorporating Allegedly Privileged Communications Into Agency Policy and Guidance**

Plaintiff argues that even if the April 11 memorandum were privileged, it would be discoverable because the United States waived the attorney-client privilege by adopting that memorandum as its policy and incorporating that memorandum by reference into Navy guidelines. The Court agrees.

The April 11 memorandum, which defendant redacted in this litigation, was appended to an April 20, 2011 memorandum, prepared for the Deputy Assistant Secretaries of the Army, Navy, Air Force, and the Staff Director, Defense Logistics Agency, that the Government produced in this litigation and elsewhere. Although the April 11 attachment was redacted in this litigation, it was substantially incorporated into three publicly available documents. The April 20 memorandum states:

> The Department of Defense Office of General Counsel (OGC) conducted an analysis of the Department of Justice's opinion on the Federal government's payment of reasonable service charges for stormwater discharges under section 313(c) of the Clean Water Act, as recently amended by Public Law 111-378. OGC's analysis is summarized in the attached memorandum dated April 11, 2011 and should be used as guidance for review of stormwater charges assessed after January 4, 2011. Also note from the guidance that no additional appropriations act language is necessary to pay stormwater charges and that section 313(c)(l) includes additional criteria for the review of stormwater charges.
>
> If a DoD Component determines that a stormwater assessment does not meet the criteria of section 313(c)(l) and is not payable, please provide my office with this information.

Pl.'s Mot. Ex. J.

Three publicly available documents reflecting official Navy policy reference the April 20, 2011 memorandum, which attached the April 11, 2011 memorandum: (1) an April 9, 2012 letter, (2) a January 10, 2014 revised Environmental Readiness Program Manual, and (3) Navy Installations Command Instruction 5090.5.

### The April 9, 2012 Letter

On April 9, 2012, the Deputy Director of the Navy's Energy and Environmental Readiness Division (N45), part of the Office of the Chief of Naval Operations, issued to "Distribution" a letter with the subject "Payment of Reasonable Stormwater Service Charges." Pl.'s Mot. Ex. L, at 1.[1] Although the "Distribution" list was not included, there is no suggestion that the letters were an attorney-client communication, and the letter was not marked "Privileged." The letter "establishes Navy policy regarding payment of reasonable service charges arising under the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act) for stormwater runoff on Navy facilities." Id. The 2012 Navy Letter explained that the Assistant Deputy Undersecretary of Defense (Installations & Environment) had issued the April 20, 2011 memorandum "providing guidance for DoD Components' review of stormwater charges to determine if they are 'reasonable service charges' and thus payable by DoD facilities." Id. at 2. Listed as reference "(c)" is the April 20, 2011 memorandum which attached the April 11 memorandum. Id. at 1. The April 9, 2012 letter incorporates verbatim from the April 11, 2011 memorandum the seven criteria for DoD components to consider when determining whether a specific stormwater charge is reasonable.

### The January 2014 Revised Program Manual

On January 10, 2014, the Navy's Office of the Chief of Naval Operations publicly released a revised version of its Environmental Readiness Program Manual ("OPNAV M-5090.1"), which "contains the Navy's policy guidance for environmental readiness" and "discusses requirements, delineates responsibilities, and issues policy guidance for the management of the environmental, natural, and cultural resources for all Navy ships and shore activities." Pl.'s Mot. Ex. M, Foreword to Environmental Readiness Program Manual (WILM0001671) (available at navysustainability.dodlive.mil/files/2016/06/Chief-of-Naval Operations-Manual-5090-1-Environmental-Readiness-Program-Manual.pdf) (last visited Jan. 3, 2019).

Chapter 20 of this manual, entitled "Clean Water Ashore," lists the April 20 memorandum as reference "(o)." Id. at 20-2. Like the 2012 Navy Letter, the Navy's Manual, OPNAV M-5090.1, cites the April 20, 2011 memorandum and reiterates that a stormwater service charge must meet the seven criteria listed in the attached April 11 memorandum.

---

[1] A copy of the April 9, 2012 Navy Letter was an enclosure to the February 24, 2016 Memo from the Commander, Navy Installations Command bearing the subject "Requirements for Payment of Stormwater Management Charges," available at: https://cnic.navy.mil/content/dam/cnic/hq/pdfs/Instructions/05000Series/CNICINST%205090.5.pdf (last visited Jan. 3, 2019).

7

**Command Instruction 5090.5**

On February 24, 2016, the Navy's Commander of Naval Installations Command issued CNIC Instruction 5090.5 ("CNICINST 5090.5"), regarding "Requirements for Payment of Stormwater Management Charges." Pl.'s Mot. Ex. K, at 1. CNICINST 5090.5 was required to be distributed to Region Counsel, engineers, installation commanding officers, and Region Environmental Divisions. Id. at 3. The purpose of CNICINST 5090.5 was "[t]o provide a unified, enterprise-wide process for assessing the payment or non-payment of stormwater management charges issued in the United States in accordance with references (a) through (e)." Id. Reference (b) to CNICINST 5090.5 is the April 11, 2011 memorandum and reference (d) is the April 20, 2011 memorandum. Command Instruction 5090.5 reiterated that the April 11, 2011 memorandum provides seven criteria that "may, in any particular case, expand or contract what qualifies as a reasonable service charge for purposes of stormwater runoff," and stated that "enclosures (1) through (3) are provided as guidance in processing stormwater charges as allowed by" 33 U.S.C. § 1323 "[i]n accordance with references (a) through (e) . . . .," which included the April 11 and April 20, 2011 memoranda. Id. at 2 (internal citation marks omitted).

When the United States or one of its agencies adopts a privileged document by reference or incorporates its contents into a public document or disclosure, the once privileged document is no longer protected by the attorney-client privilege. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 360 (2d Cir. 2005). In La Raza, the Second Circuit reasoned that it could not "allow the Department to make public use of the Memorandum when it serves the Department's ends but claim the attorney-client privilege when it does not." Id. at 361; see Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 15 (2009) (legal advice that is incorporated into an agency's policy is not protected by the attorney-client privilege).[2]

Here, the Government expressly incorporated the two memoranda into official agency policy governing payment of stormwater charges, distributed as official guidance to DoD components and thus waived the privilege.

---

[2] The Court recognizes that La Raza involved the Freedom of Information Act ("FOIA"), but agrees with the District Court for the District of Columbia that the attorney-client privilege should be given the "same meaning" in "both the discovery and FOIA contexts" to ensure that "FOIA may not be used as a supplement to civil discovery—as it could be if the attorney-client privilege were less protective under FOIA." Zander v. Dep't. of Justice, 885 F. Supp. 2d 1, 15 (D.D.C. 2012); see also Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 583 F. Supp. 2d 146, 156 (D.D.C. 2008) ("[I]f a document requested pursuant to the FOIA [Exemption 5] would normally be subject to disclosure in the civil discovery context, it must also be disclosed under the FOIA . . . . [I]nformation that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5.") (internal citations omitted).

The Court rejects Defendant's argument that this type of waiver is limited to circumstances where the legal advice at issue resolves a simple "yes-or-no" question.

**Conclusion**

Plaintiff's motion to compel discovery is **GRANTED**. Defendant shall respond to Interrogatory No. 10 **by January 18, 2018,** and produce the April 11, 2011 memorandum, forthwith.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**
