# In the United States Court of Federal Claims

No. 16-1691C

(Filed: March 4, 2021)

|   |   |
|---|---|
| **CITY OF WILMINGTON, DELAWARE,** | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) ) |

## ORDER

**SOLOMSON**, **Judge.**

      This case involves a long-running legal controversy between Plaintiff, City of Wilmington ("Wilmington"), and Defendant, the United States, concerning five properties (the "properties") that the United States Army Corps of Engineers maintains in Wilmington, Delaware. ECF No. 1 ("Compl.") at 1–2. From 2011 through 2016, Wilmington assessed water pollution service charges on those properties, but the government thus far has refused to pay these fees. *Id.* at 1–2, 6. On December 22, 2016, Wilmington filed its complaint against the government, seeking to recover "the payment of reasonable service charges" assessed for "the control and abatement of water pollution" pursuant to the Clean Water Act,[1] as amended by the Federal Responsibility to Pay for Stormwater Programs Act of 2011, Pub. L. No. 111-378, 124 Stat. 4128, codified at 33 U.S.C. § 1323.[2] Compl. at 1–3.

---

[1] 33 U.S.C. §§ 1251 *et seq.*

[2] This case originally was assigned to Judge Williams, ECF No. 2, but, on February 5, 2020, was transferred to the undersigned Judge. ECF No. 73.

The parties have concluded discovery; trial is presently scheduled for April 2021. ECF No. 89.³  Pending before the Court is Defendant's motion *in limine* to exclude testimony from Plaintiff's expert witness, Hector J. Cyre. ECF No. 68 ("Def. Mot."). Also pending before the Court is Plaintiff's motion *in limine* (1) to preclude Defendant from asserting certain arguments, (2) to exclude the testimony of Defendant's expert witness, Dr. Neil S. Grigg, and (3) to exclude several of its fact witnesses, including Robert Moore, Heather Sachs, and Daniel Kelly, from testifying. ECF No. 69 ("Pl. Mot."). The parties filed their respective response briefs, ECF Nos. 77 ("Pl. Resp."), 78 ("Def. Resp."), and the Court held oral argument on February 16, 2021. Minute Order (Feb. 8, 2021).

Pursuant to Rule 16 of the Court of Federal Claims ("RCFC"), this Court is authorized, among other things, to "consider and take appropriate action . . . [for] avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702." RCFC 16(c)(2)(D); *see Magnus Pac. Corp. v. United States*, 2016 WL 3960447, *9 (Fed. Cl. July 21, 2016) ("There is no question under RCFC 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial." (modifications omitted)). A motion *in limine* "'enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *Norman v. United States*, 56 Fed. Cl. 255, 267 (2003) (quoting *Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl. Ct. 37, 45 (1986)). "[W]hen disposing of such motions, this court enjoys broad discretion." *Sikorsky Aircraft Corp. v. United States*, 102 Fed. Cl. 38, 49 (2011) (citing *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360–61 (Fed. Cir. 2008)). Notably, given that this Court only conducts bench trials, we have "even greater discretion" to deny a motion *in limine* because "'there is no concern for juror confusion or potential prejudice.'" *RMH Tech LLC v. PMC Indus., Inc.*, 2018 WL 5095676, *3 (D. Conn. Oct. 19, 2018) (quoting *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 457 n.1 (S.D.N.Y 2007)); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (noting that "concerns [about juror confusion] are of lesser import in a bench trial"); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

For the reasons explained below, the Court **DENIES** both the government's motion *in limine* and Plaintiff's motion *in limine*.

---

³ The parties filed their respective pre-trial memorandum of contentions of fact and law. ECF Nos. 60 ("Pl. Memo"), 64 ("Def. Memo."). The parties subsequently moved for leave of the Court to file responses to those memoranda. ECF Nos. 65, 67. Both motions hereby are **GRANTED**.

**I.     Defendant's Motion *In Limine***

The government argues in its motion *in limine* that the Court should exclude the expert testimony of Hector J. Cyre, president of Water Resource Associates, Inc., pursuant to Federal Rule of Evidence 702.  Def. Mot. at 1.  Wilmington intends to have Mr. Cyre testify as an expert witness at trial that Wilmington's rate methodology for calculating stormwater charges is consistent with generally accepted industry standards.  *Id.* at 7–9.  According to the government, Mr. Cyre's testimony is not relevant to the fact-specific determination as to whether the actual charges imposed by Wilmington on the properties are "reasonable."  *Id.*  The government further contends that his testimony is not useful for determining whether Wilmington's practice of estimating the stormwater charges for non-residential properties is appropriately "based on some fair approximation of the proportionate contribution of the property" within the meaning of 33 U.S.C. § 1323(c).  *Id.* at 9–11.

"In general, Rule 702 is viewed as requiring the trial judge to ensure that proffered expert testimony is both reliable and relevant."  *Murfam Farms, LLC v. United States*, 2008 WL 4725468, *1 (Fed. Cl. Sept. 19, 2008).  Relevant evidence is that which "will help the trier of fact to understand the evidence or to determine a fact in issue" and "is based on sufficient facts or data."  Fed. R. Evid. 702.  While "the trial court acts as a 'gatekeeper' to exclude expert testimony that is irrelevant," *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003), "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heldrick*, 150 F.3d 912, 915 (8th Cir. 1998) (internal quotation marks omitted).  Simply put, "an expert's opinion should be excluded only if it is so fundamentally unsupported that it can offer no assistance to the jury."  *Wing Enters., Inc. v. Tricam Indus., Inc.*, 829 F. App'x 508, 512 (Fed. Cir. 2020) (internal quotation marks omitted).  Of course, as noted above, in a bench trial such concerns are greatly attenuated.  *See Seaboard Lumber Co.*, 308 F.3d at 1302; *Brown*, 415 F.3d at 1268–69; *RMH Tech LLC*, 2018 WL 5095676 at *3.

The Court finds that, at least at this stage, Mr. Cyre's proffered testimony is sufficiently reliable and relevant to be admitted.  In that regard, the government does not contend that his opinion is unsupported by fact or data.  *See* Def. Mot. at 7–10.  Moreover, the Court agrees that Mr. Cyre's testimony may prove "relevant to helping the trier of fact assess whether the stormwater charges . . . are normal, customary, fair and/or moderate."  Pl. Resp. at 19.  Thus, at this pre-trial stage, the Court cannot conclude that Mr. Cyre's testimony is definitively irrelevant to the statutory question that will be addressed at trial.  *See, e.g., Wing Enters.*, 829 F. App'x at 513–14 (holding that expert testimony about industry standards can be relevant "even though the testimony did not address the exact facts at hand but instead provided a more general explanation").  On the other hand, the government's concerns may (and will likely) be

raised at trial to critique the usefulness of Mr. Cyre's testimony, "but the same concerns do not adequately convince this Court that the testimony should be excluded." *David Boland, Inc. v. United States*, 2020 WL 5641873, *2 (Fed. Cl. Sept. 22, 2020). The government's motion *in limine* is **DENIED,** accordingly.

## II.   Plaintiff's Motion *In Limine*

### A.   Plaintiff's Motion To Preclude Certain Arguments Made By Defendant

Wilmington contends in its motion *in limine* that the government should be precluded from arguing that: (1) the properties contain wetlands; (2) the properties qualify for stormwater credits; (3) the stormwater charges are discriminatory; and (4) the government assessed the reasonableness of the stormwater charges prior to the filing of Wilmington's complaint. Pl. Mot. at 1.

#### 1. "Properties Contain Wetlands" Argument

Wilmington offers three arguments in support of its position that the government should not be permitted to argue that the properties at issue include wetlands, and that the assessed charges thus should be mitigated. Pl. Mot. at 2–10. The Court is not persuaded.

*First*, Wilmington asserts that the government should be judicially estopped from presenting evidence that the properties contain wetlands because when the government applied to the Delaware Department of Natural Resources and Environmental Control for a Water Quality Certification in 2007 (and, again, in 2010 and 2011), the government "did not check the boxes in the application denoting the presence of wetlands on the Properties." Pl. Mot. at 3. The doctrine of judicial estoppel is intended to prevent a litigant from "playing fast and loose with the courts" by assuming contrary positions in legal proceedings, *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 127 (2011); *see Housing Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 643 (2020), and applies "just as much when one of the tribunals is an administrative agency." *Trustees in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010). The government counters, however, that there is no inconsistency in its positions because the two proceedings address distinct issues. Def. Resp. at 3–8. The government convincingly explains that the Water Quality Certification application sought to ascertain whether the properties are "wetlands," as that legal term is used by federal and state regulations. *Id.* In contrast, the evidence that the government wants to present at trial concerns the physical character of the properties in producing stormwater run-off for purposes of assessing the reasonableness of the stormwater

charges. *Id.* As judicial estoppel is applied only when a party's positions are "mutually exclusive and directly inconsistent[,]" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1379 (Fed. Cir. 2020) (internal quotation marks omitted), the government may argue in this proceeding that its properties are wetlands for the purposes of defending against the stormwater charges to which Wilmington claims entitlement.

Furthermore, the representations that the government made in the Water Quality Certification application cannot give rise to judicial estoppel. Only when the statements made in the earlier proceeding involve the "truth-seeking function of the court" (or administrative tribunal) does judicial estoppel apply. *Egenera, Inc.*, 972 F.3d at 1379–80 (citation omitted). Simply put, judicial estoppel only applies to legal proceedings that are "'adjudicatory in nature.'" *Mony Life Ins. Co. of Amer. v. Loiza Dev. S.E.*, 2006 WL 8450729, *1 (D.P.R. Oct. 31, 2006) (quoting *United States v. Levasseur*, 846 F.2d 786, 792–93 (1st Cir. 1988)). For example, judicial estoppel does not preclude individuals from contradicting sworn statements made in a tax return. *Kaiser v. Bowlen*, 455 F.3d 1197, 1204 (10th Cir. 2006); *see Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 715 n.2 (3rd Cir. 2001) ("[W]e know of no basis for crafting a theory of estoppel based upon sworn statements in a tax return . . . .").

Wilmington relies on a decision of our appellate court, the United States Court of Appeals for the Federal Circuit, in *Lampi, LLC v. American Power Products, Inc.*, 228 F.3d 1365 (Fed. Cir. 2000), for the proposition that judicial estoppel *does* apply to statements made in an application submitted to a government agency. Pl. Mot. at 4–5. In *Lampi*, the Federal Circuit held that judicial estoppel could be enforced based upon statements made in a trademark application in proceedings before the Patent and Trademark Office ("PTO"). 228 F.3d at 1377. Wilmington's reliance upon *Lampi* misses the mark. Statements made in a trademark application are subject to substantive analysis by an examiner and may be rejected, and thus this application process is similar to an adjudicatory proceeding. *See* 37 C.F.R. §§ 2.61–2.63. In *Lampi*, the PTO examiner twice rejected the trademark application; the company obtained a trademark only after the company made certain representations to the PTO examiner following the rejections. *See Lampi, LLC v. Am. Power Prods., Inc.*, 65 F. Supp. 2d 757, 776 (N.D. Ill. 1999). Thus, judicial estoppel properly could preclude the company from contradicting its earlier representations upon which the PTO examiner relied in issuing the trademark. This distinction is further confirmed in the Federal Circuit's recent decision in *Egenera, Inc. v. Cisco Systems, Inc.*, in which that court held that statements made in a petition for the correction of a named inventor in a patent, *see* 35 U.S.C. § 256, are not grounds for judicial estoppel because "[n]o substantive examination occurs, and the PTO does not consider the substantive adequacy of the petition." 972 F.3d at 1380–81 (citing 37 C.F.R. § 1.324(b)). Here, Wilmington has provided no facts even suggesting that the Water

Quality Certification application is subject to a substantive examination or proceedings of the type that would support a judicial estoppel claim. *See* Pl. Mot. at 3, 6.

*Second*, Wilmington contends that pursuant to the doctrine of exhaustion, the government should be precluded from arguing that the properties contain wetlands because the government did not utilize Wilmington's administrative appeal process to seek lower stormwater charges. Pl. Mot. at 6–9. This, however, is not the first time that Wilmington has made this argument. Indeed, Judge Williams, who previously presided over this case, rejected that very same argument in her ruling on the parties' motions for partial judgment on the pleadings in March 2018. *City of Wilmington v. United States*, 136 Fed. Cl. 628, 633 (2018) (ECF No. 28 at 5–6). Judge Williams specifically held that the Wilmington City Code does not require a landowner, including the government, to pursue an administrative appeal; nor would an appeal have provided the government with relief because "the Wilmington City Code only grants prospective relief and does not permit parties to appeal fees that have already been assessed." *Id.* Wilmington does not dispute that essential conclusion.

To the extent that Wilmington seeks to re-litigate that determination, it should have filed a motion for reconsideration consistent with RCFC 59(b), not a motion *in limine*. "Motions *in limine* are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions *in limine*." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) (brackets and citation omitted)); *see also Barnes v. Dist. of Columbia*, 924 F. Supp. 2d 74, 81–82 (D.D.C. 2013) (denying motion *in limine* used "as a backdoor motion to reconsider").

Moreover, "a reassignment to another judge should not be viewed as declaring open season on relitigating any prior rulings with which the party disagrees." *Applegate v. United States*, 52 Fed. Cl. 751, 765–66 (2002) (citing *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997)), *aff'd*, 70 F. App'x 582 (Fed. Cir. 2003). Indeed, the "law of the case" doctrine counsels against "relitigat[ing] matters already adjudicated absent some indication of extraordinary circumstances." *Applegate*, 52 Fed. Cl. at 765. Judge Williams carefully considered and rejected Plaintiff's exhaustion argument, *see City of Wilmington*, 136 Fed. Cl. at 633, and Wilmington does not suggest a compelling reason to revisit her conclusions. In any event, even if the undersigned were to reconsider Judge Williams' earlier decision, the outcome in all likelihood would be the same. The parties are free to argue about how to properly interpret and apply the statutory provisions at issue, but the Court will not revisit that question before trial to exclude particular arguments or testimony.

*Third*, Wilmington argues that the government failed to disclose in its interrogatory responses that it intended to raise factual issues at trial regarding the properties' wetland status.  Pl. Mot. at 9–10.  Wilmington contends that it learned of this defense for the first time in Dr. Grigg's expert report which was shared with Wilmington only after the close of fact discovery.  *Id.*  Wilmington accordingly seeks to have this Court impose a discovery sanction pursuant to RCFC 37, prohibiting the government from relying upon such facts or testimony during trial.  *Id.* at 10 (citing RCFC 37(c)(1)).  Wilmington acknowledges in its motion, however, that the government responded, in its answer to the relevant interrogatory, that the government "would provide its [complete] response *when expert disclosures were due.*"  *Id.* at 9.  (emphasis added).  Wilmington thus was on notice that the government could not identify all possible defenses until Dr. Grigg submitted his expert report.

To the extent Wilmington was unsatisfied by the government's interrogatory response, Wilmington should have filed a timely motion pursuant to RCFC 37 to compel discovery.  Wilmington should not have waited until nearly the eve of trial to seek exclusion of the government's evidence.[4]  A motion *in limine* is not to be used "as a substitute for motions to compel discovery or for discovery sanctions that should have been brought earlier."  *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1094 (C.D. Cal. 2012); *see McCon v. Perez*, 2018 WL 4006971, *1 (S.D. Miss. Aug. 20, 2018) (denying a motion *in limine* seeking Rule 37(c) relief).  In the absence of a timely motion to compel, this Court will not preclude the government from presenting evidence that the properties contain wetlands and, accordingly, the Court **DENIES** Wilmington's motion to exclude this argument.

### 2. "Properties Qualify For Stormwater Credits" Argument

Wilmington additionally contends that the government should be precluded, pursuant to the doctrine of exhaustion, from asserting that the properties are eligible for stormwater credits. Pl. Mot. at 11.  In Wilmington's view, the government's failure to apply for stormwater credits through the city's stormwater credit application process forecloses the government's argument.  *Id.*  For the same reasons the Court rejected Wilmington's exhaustion argument above, *see supra* Sec. II.A.1, the Court **DENIES** the motion to exclude this argument, as well.

---

[4] Wilmington did previously file a motion to compel discovery pertaining to other matters in this case, ECF Nos. 36, 37, which, on January 3, 2019, Judge Williams granted.  *See City of Wilmington v. United States*, 141 Fed. Cl. 558 (2019) (ECF No. 45).

### 3. "Stormwater Charges Are Discriminatory" Argument

Wilmington further argues that the government for the first time in Dr. Grigg's expert report contends that the city's stormwater charges are "discriminatory" as that term is used in 33 U.S.C. § 1323(c). Pl. Mot. at 11–13. Wilmington, again, seeks to have this Court preclude the government from raising such arguments at trial pursuant to RCFC 37. *Id.* Aside from this Court's reluctance to apply RCFC 37 sanctions at this stage, *see supra* Sec. II.A.1, the government in any event represents that it does not intend to argue that the charges are "discriminatory" in the manner that Wilmington assumes. Def. Resp. at 9–12. The government explains in its response, and further clarified this point during oral argument, that it is challenging the fairness of the stormwater charges generally. *Id.* The government does not intend to argue that the charges are "discriminatory" in that sense that Wilmington is targeting federal properties for unfair treatment. *Id.* Rather, the government intends to present evidence to support its view that the service charges associated with certain property classifications do not accurately reflect the relative benefits from the stormwater management program and contributions to stormwater run-off. *Id.* Accordingly, the Court **DENIES** the motion to exclude this argument as moot.

### 4. "Attorney-Client Privilege Documents" Argument

"Out of an abundance of caution," Wilmington asserts in its motion *in limine* that the government should be precluded from using any materials demonstrating or supporting the government's contemporaneous assessment that the stormwater charges were unreasonable. Pl. Mot. at 13–16. This is because, according to Wilmington, the government previously shielded those documents from Wilmington during discovery by invoking attorney-client privilege. *Id.* While the Court is unsure whether or how the government's contemporaneous assessment is relevant to the Court's *de novo* review of Wilmington's claim for payment pursuant to the statute at issue, the Court cannot conclude at this stage that the government's views at the time it declined to pay Wilmington's charges are irrelevant. In any event, the government represented to the Court at oral argument that the government does not intend to rely upon any privileged materials, not previously disclosed to Wilmington, during the trial. The Court will hold the government to that commitment during trial. Accordingly, the Court **DENIES** the motion to exclude this argument as moot, as well.

### B.     Dr. Grigg's Expert Testimony

Wilmington requests that the Court exclude portions of the expert testimony proffered by Dr. Neil S. Grigg, professor of civil and environmental engineering at Colorado State University. Pl. Mot. at 17; ECF No. 70-2 ("Grigg Rep.") at 1, 17. The

government intends to have Dr. Grigg testify that Wilmington's service charges related to the properties are unreasonable for nine reasons. *See* Grigg Rep. at 1–3. Wilmington primarily contends that opinion nos. 3, 8, and 9 of Dr. Grigg's testimony constitute hearsay because they rely on the opinions of other "undisclosed" and "non-testifying" experts who work for the Army Corps of Engineers and therefore should be excluded pursuant to Federal Rule of Evidence 703. Pl. Mot. at 17–24.

In opinion no. 3 of his expert report, Dr. Grigg concludes that Wilmington inaccurately calculated the stormwater charges based on an analysis of the physical characteristics and aerial photos of the properties. Grigg Rep. at 5–6. He additionally explained that "[t]he low contributions of the properties to stormwater pollution can also be demonstrated by their actual land use and by modeling results, which are included with this report as Appendix 6." *Id.* at 5. Appendix 6 contains site and hydrologic modeling data intended to "demonstrate how much runoff would leave the [properties] after a typical rainfall." *Id.* at 40–43. Robert J. Moore, a hydraulic engineer with the Army Corps of Engineers, provided this modeling information to Dr. Grigg. *Id.* at 42. The government did not disclose that Mr. Moore would be called to testify; rather, Dr. Grigg intends to utilize Mr. Moore's modeling as part of his expert testimony. Pl. Mot. at 22–24.

In opinion nos. 8 and 9, Dr. Grigg referenced Appendix 4 of his report, which contains data relating to the properties' measurements. Grigg Rep. at 11–14. In Appendix 4, Dr. Grigg indicated that the Army Corps of Engineers provided maps and accompanying analysis that demonstrate a different computation is warranted (*i.e.*, from that of Wilmington). *Id.* at 32–36. Heather M. Sachs, a realty specialist with the Army Corps of Engineers, provided that property information to Dr. Grigg. Pl. Mot. at 23–24. The government, however, did not disclose Ms. Sachs as a fact witness. *Id.*

Rule 703 of the Federal Rules of Evidence provides that an expert is permitted to rely on evidence that is otherwise inadmissible, "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." The Advisory Committee Notes to the 1972 Proposed Rules permit a doctor to rely on "statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." Fed. R. Evid. 703 Advisory Committee Note. "One expert may not, however, merely adopt another expert's opinions as his or her own reflexively and without understanding the materials or methods underlying the other expert's opinions." *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 130–31 (S.D.N.Y. 2015); *see Mike's Train House, Inc., v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006) ("Other circuits have squarely rejected any argument that Rule 703 extends so far as to allow an expert to testify about the conclusions of other experts."). Indeed, this would "allow a witness, under the guise of giving expert

testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Brace v. United States*, 72 Fed. Cl. 337, 352 (2006) (internal quotation marks omitted).

While Wilmington correctly notes that there is case law supporting its position that expert testimony can become inadmissible when it is based on the opinions of another, Pl. Mot. at 19–20, those cases are not comparable to the case at hand. Those cases establish that an expert cannot submit a report as substantive evidence of his or her conclusions that was not used in formulating his or her expert opinion, *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1060–62 (9th Cir. 2003), and that one expert cannot testify in support of the conclusions of another non-testifying expert. *Mike's Train House, Inc.*, 472 F.3d at 409;[5] *United States v. Grey Bear*, 883 F.2d 1382, 1392–93 (8th Cir. 1989).

Wilmington relies extensively on *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002), but that case is not particularly helpful to Wilmington's argument. *Dura* involved an expert witness relying on the computer modeling his assistants created where the "underlying expert judgment is in issue" and where the models were "inherently not the most precise of scientific tools." 285 F.3d at 613–14. Further, the expert witness *admitted* that he was not qualified to discuss the modeling. *Id.* at 611–12; *see Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 845–46 (N.D. Ill. 2018) ("In *Dura*, the plaintiffs' sole named expert admitted in depositions that his analysis relied upon mathematical models that he lacked the expertise to evaluate.").

In the present case, in contrast, Dr. Grigg intends to incorporate into his testimony the analysis of Mr. Moore and Ms. Sachs. Notably, Wilmington does not seriously contest either the accuracy or the soundness of the underlying computer modeling or mapping data that Dr. Grigg relies upon in his report; nor does Wilmington contend that experts in Dr. Grigg's field do not regularly rely on such analysis. *See* Pl. Mot at 17–24. Although Wilmington claims that Dr. Grigg does "not understand[] the software, methods, or data used . . . due to a lack of access to or competency in the methods employed by the [Army Corps] experts[,]" *Id.* at 21, Wilmington provides no factual basis to substantiate its bald assertion. Wilmington further asserts that "Dr. Grigg never worked with the [Army Corps] experts, had no input in choosing who would conduct the research, and did not supervise the activities of the [Army Corps] experts." *Id.* at 21–22. These all may be true criticisms. But none

---

[5] Indeed, in *Mike's Train House, Inc.*, the expert witness "testified *extensively* about the conclusions" reached by a different, non-testifying expert. 472 F.3d at 409 (emphasis added). In contrast, Dr. Grigg's report makes minimal mention of Mr. Moore's and Ms. Sachs' work. *See* Grigg Rep. at 5, 11–14.

of these alleged failures purport to show that Dr. Grigg does not understand Mr. Moore's or Ms. Sachs' analysis. Accordingly, Wilmington's criticisms "go to weight, not admissibility[,]" and may be explored on cross-examination.[6] *U.S. Bank Nat. Ass'n*, 112 F. Supp. 3d at 131.

Wilmington offers additional arguments in support of excluding other portions of Dr. Grigg's expert testimony. *See* Pl. Mot. at 25–37. Given that these arguments raise issues based either on the relevancy of Dr. Grigg's testimony or exhaustion of Wilmington's appeal process, the Court denies these parts of Wilmington's motion, for the reasons explained above. *See supra* Sec. I (relevancy of expert testimony); Sec. II.A.1–2 (exhaustion).

### C. Mr. Kelly's Testimony

Finally, Wilmington seeks to exclude Daniel Kelly's testimony at trial, arguing that the government did not properly disclose him as a witness. Pl. Mot. at 37–38. But Wilmington critically undercuts its own argument. In its motion *in limine*, Wilmington concedes that the government included Mr. Kelly in its initial disclosures as one of 13 individuals who may possess discoverable information. *Id.* at 38. Wilmington also acknowledges that, in response to an interrogatory seeking a more definite list of trial witnesses, the government incorporated its initial disclosures by reference. *Id.*; Def. Resp. at 24. While Wilmington understandably would have preferred a more specific witness list at the outset, the Court cannot conclude that the government somehow failed to disclose Mr. Kelly as a potential witness. To the extent that Wilmington believes that it will be prejudiced by not having deposed Mr. Kelly, Wilmington should have filed a timely motion to reopen discovery for the limited purpose of taking Mr. Kelly's deposition and not wait until this late date to seek the exclusion of his testimony.

---

[6] This conclusion also resolves the additional issue of Mr. Moore's and Ms. Sachs' testifying at trial. The government originally did not disclose that Mr. Moore and Ms. Sachs would be called as witnesses; rather, the first mention of their testifying was in the government's witness list submitted along with its pre-trail memorandum. *See* ECF No. 64-1. Wilmington, in its motion *in limine*, moved to have them excluded pursuant to RCFC 37. Pl. Mot. at 37. The government in response indicates that it included Mr. Moore and Ms. Sachs on the witness list only "out of an abundance of caution" because the government was concerned that "Wilmington might attempt the type of collateral attack on Dr. Grigg's report that it attempts with this motion in limine." Def. Resp. at 21 n.11. Because the Court will permit Dr. Grigg to address Mr. Moore's and Ms. Sachs' analysis, there is no need for them to testify at trial and, accordingly, Wilmington's motion to exclude their testimony is **DENIED** as moot.

<u>CONCLUSION</u>

The parties' motions for leave of the Court to file responses to the pre-trial memorandum of contentions of fact and law hereby are **GRANTED**.  For the reasons explained above, the Court **DENIES** the government's motion *in limine* and **DENIES** Plaintiff's motion *in limine*.

**IT IS SO ORDERED.**

<u>s/ Matthew H. Solomson</u>
Matthew H. Solomson
Judge