# In the United States Court of Federal Claims

No. 16-1691C

(Filed: June 8, 2021)

|  |  |
|---|---|
| **CITY OF WILMINGTON, DELAWARE,** | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) ) |

### ORDER

**SOLOMSON, Judge.**

     This case involves a long-running legal controversy between Plaintiff, City of Wilmington ("Wilmington"), and Defendant, the United States, concerning five properties (the "Wilmington properties") that the United States Army Corps of Engineers maintains in Wilmington, Delaware, near the Christina River. ECF No. 1 ("Compl.") at 1–2. From 2011 through 2016, Wilmington assessed water pollution service charges on those properties, but the government thus far has refused to pay these fees. *Id.* at 1–2, 6. On December 22, 2016, Wilmington filed its complaint against the government, seeking to recover "the payment of reasonable service charges" assessed for "the control and abatement of water pollution" pursuant to the Clean Water Act,[1] as amended by the Federal Responsibility to Pay for Stormwater Programs Act of 2011, Pub. L. No. 111-378, 124 Stat. 4128, codified at 33 U.S.C. § 1323. Compl. at 1–3.

     Trial commenced on April 19, 2021. ECF No. 89. On April 20, 2021, following the close of Wilmington's case-in-chief, the Court suspended trial to permit the government to file its motion for judgment on partial findings pursuant to Rule 52(c) of the Court of Federal Claims ("RCFC"). ECF No. 105 at 436, 441–45; *see* ECF No. 102.

---

[1] 33 U.S.C. §§ 1251 *et seq.*

Before the Court suspended the trial, however, Wilmington moved the Court to admit into the record additional pieces of evidence, a request to which the government objected.  ECF No. 105 at 426–35, 444.  On April 21, 2021, the Court ordered a briefing schedule so that the parties could address the evidentiary issues.  ECF No. 102.

On May 4, 2021, Wilmington filed its timely motion to admit evidence into the record.  ECF No. 106 ("Pl. Mot.").  Specifically, Wilmington moves to admit into evidence portions of the Rule 30(b)(6) deposition testimony taken from the government's designated witness Craig Homesley, Chief of the United States Army Corps of Engineers' Project Support Branch,[2] as well as Plaintiff's Exhibits 1, 2, 28, and 43.[3]  Pl. Mot. at 2.  On May 18, 2021, the government filed its response brief, indicating that while the government does not object to the admission of these portions of Mr. Homesley's deposition, the government seeks to admit other portions of Mr. Homesley's deposition that the government previously counter-designated in its filings with the Court.[4]  ECF No. 112 ("Def. Resp.") at 3–4 (citing ECF No. 64–4).  The government additionally opposes admitting Wilmington's four exhibits into the record.  *Id.* at 5–10.  On May 25, 2021, Wilmington sought leave of the Court to file a reply, which the Court granted.  ECF No. 113, Minute Order (May 25, 2021).  Later that same day, Wilmington filed its reply brief.  ECF No. 114 ("Pl. Reply").

**I.     Plaintiff's Motion To Admit Evidence**

    **A.     Rule 30(b)(6) Deposition Testimony**

RCFC 30(b)(6) allows a party, including the government, to designate a deponent "to testify on its behalf."  As a general matter, "testimony of a Rule 30(b)(6) witness is binding on the government."  *Zip-O-Log Mills, Inc. v. United States*, 113 Fed. Cl. 24, 32 (2013); *but see King v. United States*, 119 Fed. Cl. 277, 284 (2014) (noting exceptions to the general rule).

---

[2] Wilmington requests that the Court admit the following portions of Mr. Homesley's deposition into evidence:  Tr. 14:5–21; 15:1–4; 15:18–16:12; 17:19–18:15; 29:4–17, 40:3–41:11; 37:21–38:5; 43:3–17; 46:16–47:18; 48:12–19; 54:3–55:3.  Pl. Mot. at 4.

[3] Regarding Plaintiff's Exhibit 4, Wilmington requests that this exhibit be admitted without pages COE000077 and COE000080–82.  Pl. Reply at 4.

[4] The government requests that the Court admit the following portions of Mr. Homesley's deposition into evidence:  Tr. 12:2–19; 21:2–5, 8–16; 29:18–30:1; 31:2–8; 38:9–39:5; 39:16–18, 39:21–40:2; 43:3–17; 62:5–15; 63:13–64:12; 65:19–66:2; 66:5; 71:10–15; 71:17–72:19.  Def. Resp. at 4; *see* ECF No. 64-4.

RCFC 32(a)(1) establishes that "[a]t a hearing or trial, all or part of a deposition may be used against a party" provided:

> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
>
> (C) the use is allowed by RCFC(a)(2) through (8).

Moreover, RCFC 32(a)(3) provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's . . . designee under RCFC 30(b)(6)[.]"  A deposed party-designee need not be found "unavailable" prior to a court admitting that deposition testimony into evidence. *Long Island Savings Bank, F.S.B. v. United States*, 63 Fed. Cl. 157, 164 (2004); *see Wisconsin Elec. Power Co. v. United States*, 2007 WL 5209538, at *13 (Fed. Cl. Aug. 16, 2007) ("To admit statements of a party-opponent, plaintiff need not establish the witness is unavailable."); *Anchor Sav. Bank, FSB v United States*, 2005 WL 6112617, at *1–*3 (Fed. Cl. May 17, 2005) (holding that the plaintiff was not required to demonstrate the unavailability of designated deponents before using their depositions as substantive evidence).

The government does not oppose Wilmington's motion to admit portions of Mr. Homesley's deposition testimony because, consistent with RCFC 32, Mr. Homesley was one of the government's Rule 30(b)(6) designee witnesses and the government was present at the time of his deposition.  Def. Resp. at 3–4.  Rather, the government seeks to have additional portions of Mr. Homesley's deposition testimony admitted into the record.  *Id.* at 4.  In that regard, pursuant to RCFC 32(a)(6), "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."

Wilmington opposes the government's request, contending – without citation to any authority – that RCFC 32(a)(6) is only intended to "avoid misleading the trier of fact," which Wilmington agrees is not a concern at a bench trial.  Pl. Reply at 1–2 (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)).  This argument borders on frivolous because, given that this Court *only* conducts bench trials, such a reading would render RCFC 32(a)(6) a dead letter.  Moreover, as Wilmington also agrees, the purpose of that rule is to ensure completeness of the record.  Pl. Reply at 2 (citing *Marin*, 669 F.2d at 84).  Given that salutary goal and the commonsense proposition that

completeness generally mitigates confusion – not to mention Wilmington's concession about the nature of a bench trial – the Court has a difficult time even following Wilmington's train of thought here. Wilmington further asserts that the government's counter-designations "have little or no relationship to the portions of testimony Wilmington designated in its motion."[5] Pl. Reply at 2–3. Having reviewed the government's counter-designations, however, the Court finds that these additional portions from Mr. Homesley's deposition provide necessary context for his testimony and likewise should be admitted into the record pursuant to this Court's rules.

### B.    Plaintiff's Exhibits

Wilmington additionally seeks to have the following four exhibits admitted as evidence into the trial record:

- Plaintiff's Exhibit 1 ("PX 1") and Exhibit 4 ("PX 4") are Water Quality Certificates (and related application materials) that the Army Corps of Engineers applied for and obtained from the Delaware Department of Natural Resources and Environmental Control ("DNREC"). Pl. Mot. at 8–10. PX 1 was issued in 2008 and PX 4 is from 2012. *Id.* These documents, in Wilmington's view, indicate that certain pollutants may have been released by the Army Corps of Engineers into the Christina River. *Id.*

- Plaintiff's Exhibit 28 ("PX 28") is a United States Environmental Protection Agency ("EPA") publication, printed in January 2008, entitled "Funding Stormwater Programs." Pl. Mot. at 5. EPA published this document to "assist local stormwater managers understand the alternatives available to fund their stormwater program" and mentions Wilmington's stormwater utility program. *Id.* at 5–6 (quoting PX 28).

- Plaintiff's Exhibit 43 ("PX 43") is an Army Corp of Engineers manual, published in 2015, entitled "Dredging and Dredged Material Management." Pl. Mot. at 6. The Wilmington properties are of a type that the manual notes are subject to stormwater erosion, which may lead to run-off of dredged materials into the Christina River. *Id.* at 6–7.

---

[5] Not withstanding this objection, Wilmington concedes that some of the government's counter-designations are perhaps relevant and that "[i]f pressed, [it] would not oppose admitting Tr. 12:2–19, 21:2–5, 21:8–16, 29:18–30:1, and 40:3–17." Pl. Reply at 3. In any event, the Court does not see a clear and decisive basis upon which to distinguish these designations from those Wilmington more strongly opposes.

Pursuant to Federal Rule of Evidence ("FRE") 401, relevant evidence is information having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." The Court is mindful that the relevancy standard is a "liberal one." *Yankee Atomic Elec. Co. v. United States*, 2004 WL 1535686, at *2 (Fed. Cl. Jun. 28, 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). Moreover, while FRE 403 permits the Court in its gatekeeping function to exclude relevant evidence that could lead to "confusing the issues," such concerns are mitigated because there are no jury trials in this Court. *See Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (noting that "concerns [about juror confusion] are of lesser import in a bench trial"); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").[6]

The government opposes admitting these documents into the record because: (1) they are not relevant to whether Wilmington's stormwater charges are "fair and reasonable"; (2) they constitute inadmissible hearsay; and (3) to the extent the documents are relevant and admissible, their "probative value is substantially outweighed by the danger of confusing the issues." Def. Resp. at 4–5.

The Court, however, agrees with Wilmington. *First*, while these documents may not be highly relevant to or dispositive of the legal issue in this case – whether Wilmington's charges on the federal properties are "fair and reasonable" and assessed for the control of stormwater pollution – "disputes about the degree of relevance or accuracy . . . may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).

*Second*, these documents are not inadmissible hearsay. Pursuant to the FRE 803(8) "public records" exception to hearsay rule, "[a] record or statement of a public office" is admissible if "it sets out . . . the office's activities . . . and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." PX 1, a DNREC-issued Water Quality Certificate, clearly identifies DNREC's action – permitting the Army Corps of Engineers to dredge the federal properties subject to certain conditions – and the government does not contest the legitimacy of this certificate. *See Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1371–72 (Fed. Cir. 1991) (affirming trial court's admission of patent

---

[6] *See* 28 U.S.C. § 2503(b) ("The proceedings of the Court of Federal Claims shall be . . . in accordance with the Federal Rules of Evidence."); *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 504 (2009) ("the Federal Rules of Evidence, as congressional enactments, are controlling on this court").

Certificate of Correction pursuant to FRE 803(8)).  Likewise, PX 28 and PX 43 are both publications issued, respectively, by the EPA and the Army Corps of Engineers, that discuss stormwater management and, thus, are squarely within FRE 803(8)'s public record hearsay exception.  *See Yankee Atomic*, 2004 WL 1535686, at *4–*5 (holding that agency reports are admissible under FRE 803(8)).

*Third*, although the portions of PX 4 that Wilmington now seeks to admit, *see supra* n. 3, may not qualify as a public record, what remains at issue is a series of documents that the Army Corps of Engineers submitted to DNREC as part of its Water Quality Certificate application.  Any statements therein properly constitute admissions by a party opponent and are admissible under FRE 801(d)(2)(B) ("The statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true[.]").  The government does not appear to contest that conclusion.  *See* Def. Resp. at 5-6 (arguing against relevancy and challenging admissibility of documents Wilmington no longer seeks to admit).

*Finally*, given that this Court is the finder of fact (rather than a jury), there is no danger that these documents will overly confuse the relevant issues in a manner that will substantially outweigh the probative value of these documents.  *See Seaboard Lumber*, 308 F.3d at 1302.

## CONCLUSION

Wilmington's motion to admit portions of Mr. Homesley's deposition testimony and PX 1, 4 (without pages COE000077 and COE000080–82), 28, and 43 hereby is **GRANTED**.  The government's request to move its counter-designated portions of Mr. Homesley's deposition testimony into the record is, likewise, hereby **GRANTED**.

**IT IS SO ORDERED.**

s/ Matthew H. Solomson  
Matthew H. Solomson  
Judge